IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CATHERINE SALAS, | ) | |
| ID # 81348-053, | ) | |
| Movant, | ) | |
| | ) | No. 3:20-CV-445-L-BH |
| vs. | ) | No. 3:16-CR-56-L(12) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on February 19, 2020 (doc. 1), should be **DENIED** with prejudice.

### I.   BACKGROUND

Catherine Salas (Movant) challenges her federal conviction and sentence in Cause No. 3:16-CR-56-L(12).  The respondent is the United States of America (Government).

**A.   Conviction and Sentencing**

On January 24, 2017, Movant was charged with others in a multi-count superseding indictment with one count of conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a) (Count Two).  (*See* doc. 64 at 23-41.)[2]  She pled guilty to Count Two of the superseding indictment on October 31, 2017, under a plea agreement.  (*See* docs. 179, 188.)

In her plea agreement, Movant stated that she understood and waived her rights to plead

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Unless otherwise noted, all document numbers refer to the docket number assigned in the underlying criminal action, No. 3:16-CR-56-L(12).  Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

not guilty, to have a trial by jury, to have her guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses, to call witnesses, and to not be compelled to incriminate herself. (*See* doc. 179 at 1.) She agreed that she understood the nature and elements of the crime to which she was pleading guilty, and that the factual resume she signed was true and would be submitted as evidence. (*See id.*) The plea agreement set out the range of punishment for Count Two and stated that Movant had reviewed the federal sentencing guidelines with counsel, that she understood her sentence would be imposed by the Court after consideration of the sentencing guidelines, which were advisory and not binding, and that no one could predict with certainty the outcome of the Court's consideration of the guidelines. (*See id.* at 2.) She understood that the Court had sole discretion to impose the sentence. (*See id.*) The guilty plea was freely and voluntarily made; it was not the result of force or threats, or of promises apart from those included in the plea agreement; and there were no guarantees or promises from anyone about what her sentence would be. (*See id.* at 5.) She waived her right to appeal her conviction and sentence and her right to contest the conviction and sentence in any collateral proceeding, except that she reserved the right (a) to bring a direct appeal of a sentence exceeding the statutory maximum punishment or an arithmetic error at sentencing, (b) to challenge the voluntariness of her guilty plea or the waiver of appeal, and (c) to bring a claim of ineffective assistance of counsel. (*See id.* at 6.) In exchange, the Government agreed not to bring any additional charges against Movant based on the conduct underlying and related to her guilty plea, and to dismiss any remaining charges in the pending indictment after sentencing. (*See id.* at 4.)

At her re-arraignment on October 31, 2017, Movant, through a Spanish-to-English interpreter placed under oath to translate the proceedings for her, acknowledged under oath that she had carefully discussed the factual resume with counsel, it had been translated for her, she was

comfortable she understood everything in it before she signed it, the facts set out in it were true and correct, and she had committed all of the essential elements of Count Two. (*See* doc. 440 at 3, 10-11, 18.) She also acknowledged that she carefully reviewed the plea agreement and plea agreement supplement with counsel, and that the documents were translated for her and she was comfortable she understood everything stated in them before she signed them. (*See id.* at 12.) She acknowledged that she understood the rights she was giving up by pleading guilty and that she was waiving her right to appeal from or challenge her conviction, except to bring a direct appeal of a sentence exceeding the statutory maximum punishment or a math error at sentencing, to challenge the voluntariness of her guilty plea and waiver, and to bring a claim of ineffective assistance of counsel. (*See id.* at 6-7, 14-15.) She affirmed that she had discussed with her attorney how the sentencing guidelines might apply to her case; she understood that she should not depend or rely on any statement or promise, including that of her counsel, as to the exact sentence she would receive because only the Court could make that decision. (*See id.* at 8.) She acknowledged that by pleading guilty, she was subjecting herself to a maximum period of imprisonment of 20 years. (*See id.* at 16-17.) She pled guilty, and the Court found that her guilty plea was knowing and voluntary. (*See id.* at 17-19; docs. 190, 194.)

On January 12, 2018, the United States Probation Office (USPO) prepared a Presentence Investigation Report (PSR) in which it applied the 2016 United States Sentencing Guidelines Manual. (*See* doc. 225-1 at ¶ 29.) The PSR determined that the total loss resulting from the offense was $450,000. (*See id.* at ¶¶ 19, 25, 32.) After applying the applicable guideline for § 1951(a) offenses, the PSR calculated a base offense level of 20. (*See id.* at ¶ 30.) Four levels were added for use of a dangerous weapon, namely a BB gun, under U.S.S.G. § 2B3.1(b)(2)(D), and two levels were added under U.S.S.G. § 2B3.1(b)(7)(C) based on a total loss of $450,000, which was more

3

than $95,000 but less than $500,000. (*See id.* at ¶¶ 31-32.)   Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 23. (*See id.* at ¶¶ 38-40.)  Based on a total offense level of 23 and a criminal history category of I, the resulting guideline imprisonment range was 46 to 57 months. (*See id.* at ¶ 65.)

On February 22, 2018, Movant filed objections to the PSR, arguing for corrections to her identifying information and arrest date. (*See* doc. 274.)  The USPO issued an addendum to the PSR on March 2, 2018, accepting Movant's corrections to her identifying information and rejecting the correction to her arrest date. (*See* doc. 276-1.)  On March 9, 2018, Movant objected to the addendum, again disputing the arrest date. (*See* doc. 279.)

At the sentencing hearing on September 17, 2018, Movant's objections to her identifying information in the PSR were denied as moot, and her objection to the arrest date was sustained.[3] (*See* doc. 446 at 5; doc. 570 at 1.)  The parties did not object to the Court's determination or calculation of the sentencing guidelines. (*See* doc. 446 at 9.)  The total loss amount attributed to Movant and her co-defendants was also determined to be less than the loss amount stated in the PSR. (*See id.* at 6-7, 18, 24-25.)  By judgment dated September 19, 2018, Movant was sentenced to 48 months' imprisonment, to be followed by a two-year term of supervised release; she was also ordered to pay $207,823 in restitution, jointly and severally with three co-defendants, and a $100 assessment. (*See* doc. 382.)  On direct appeal, appellate counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), and the appeal was dismissed on June 4, 2019. *United States v. Salas*, 772 F. App'x 73 (5th Cir. 2019).  The case was also remanded for the limited purpose of correcting the restitution amount by $1. *See id.* at 73-74.  The amended judgment with the

---

[3] Although the transcript of the sentencing hearing indicates that the Court overruled Movant's objection to her arrest date, the surrounding discussion about the objection and the Court's statement of reasons for the amended judgment show that the objection was actually sustained at sentencing. (*See* doc. 446 at 5; doc. 570 at 1.)

corrected restitution figure of $207,822 was entered on June 28, 2019. (*See* doc. 569.) Movant did not appeal the amended judgment.

B.  **Substantive Claims**

Movant asserts the following grounds for relief:

(1) Ineffective assistance of counsel in violation of United States Constitution, Amendment VI;

(2) Ineffective assistance of counsel in violation of the Constitution of the United States, Amendment VI[1791];

(3) Violation of the Constitution of the United States, Amendment V [1791] due process of law clause; and

(4) The Court erred increasing four-levels [sic] for dangerous weapon.

(No. 3:20-CV-445-L-BH, doc. 1 at 4-8.) The Government filed a response on April 22, 2020. (*See id.*, doc. 5.) Movant filed a reply on June 9, 2020.[4] (*See id.*, doc. 6.)

## II.     SCOPE OF RELIEF UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising

---

[4] According to the Bureau of Prisons' (BOP) inmate locator, Movant was released from BOP custody on December 4, 2020. *See* BOP Inmate Locator, *available at* https://www.bop.gov/inmateloc/ (last visited Jan. 12, 2023). The record indicates that Movant could be removed or deported from the United States following the completion of her federal sentence based on her immigration status, (*see* doc. 440 at 13-14), but it does not show whether she has been removed or deported, has been in the custody of another entity at any time since her release from the BOP, or has otherwise served her term of supervised release and satisfied the restitution owed, so as to render this action moot.

5

the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In her first and second grounds, Movant claims that she received ineffective assistance of counsel. (*See* No. 3:20-CV-445-L-BH, doc. 1 at 4-5.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

A.   <u>**Waiver of Appeal**</u>

Movant's first ground contends that counsel was ineffective based on "[m]isrepresentation for recommended [sic] movant to waive all her right [sic] to appeal without explaining the legal consequences of such matter." (No. 3:20-CV-445-L-BH, doc. 1 at 4.) Her allegation is liberally construed as a challenge to the voluntariness of her appellate waiver. (*See id.*)

For an appellate waiver to be knowing and voluntary, the defendant must know that she had, and was giving up, the right to appeal her sentence, and the defendant must understand the consequences of the waiver. *United States v. Jacobs*, 635 F.3d 778, 781 (5th Cir. 2011). "If the district court accurately explains the terms and consequences of the waiver of appeal and the defendant states on the record that [s]he understands them, the defendant's later contention that [s]he did not really understand will not invalidate the waiver." *Id.*

Here, Movant's plea documents and responses under oath to the Court's questioning show

that she knew and understood that her guilty plea limited her appellate rights. The waiver provision of the plea agreement explicitly and unambiguously waived her right to directly appeal or collaterally challenge her conviction and sentence except in limited circumstances. (*See* doc. 179 at 6.) In addition, Movant's sworn testimony during her re-arraignment clearly shows that she was informed of and voluntarily and freely agreed to the waiver. (*See* doc. 440 at 14-15.) She affirmed that she carefully reviewed the plea agreement with counsel and had it translated before she signed it. (*See id.* at 12.) She specifically indicated that she was comfortable she understood everything stated in the plea agreement, and she affirmed that she was voluntarily and freely waiving her appeal rights as limited by the plea agreement. (*See id.* at 12, 14-15.) The totality of the circumstances shows that at the time of the re-arraignment proceedings and the entry of her guilty plea, Movant understood that she was waiving her appeal rights as set forth in the plea agreement. She entered her plea with sufficient knowledge regarding the waiver of her appeal rights, including her right to present claims in a collateral attack under § 2255. She has not shown that her appellate waiver was involuntary based on alleged ineffective assistance of counsel, and her claim on this ground should therefore be denied.

**B.** **Failure to Object**

In her second ground, Movant contends that she "told her attorney to object the [sic] actual loss and/or restitution because the amount and the way the government was conducting the calculation was totally inconsistent and unconstitutional, but her attorney rejected her petition and failed to clarify the claimed 'loss amount'." (No. 3:20-CV-445-L-BH, doc. 1 at 5.) She states that she "is challenging the loss and/or restitution, and respectfully requesting and [sic] forensic audit account in such matter." (*Id.*)

Here, the PSR stated that J.D., a traveling jewelry salesman and victim of the robbery

underlying Movant's offense, reported a loss of $450,000. (*See* doc. 225-1 at ¶ 19.) The information set forth in the PSR was obtained from the criminal filings, investigative materials detailing the FBI's investigation into the offense conduct, and corroboration and supplementation from USPO interviews with FBI agents. (*See id.* at ¶ 11.) J.D. also informed the case agent that he suffered an inventory loss of $450,000, and that the inventory loss was insured under a policy with a $5,000 deductible. (*See id.* at ¶ 25.) At the sentencing hearing, the Government explained that the correct loss amount was $206,322 in inventory losses, plus $1,500 in incidental losses suffered by J.D.[5] (*See* doc. 446 at 18.) Movant's counsel expressly stated that he did not have any objection to the amended, lesser loss amount. (*See id.* at 19-20.)

Movant has provided no evidence to demonstrate that the loss and restitution amounts, or the way they were calculated, were "totally inconsistent and unconstitutional." (No. 3:20-CV-445-L-BH, doc. 1 at 4.) Her conclusory and unsubstantiated statements of inconsistency and unconstitutionality are insufficient to obtain relief. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition [ ], unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). She therefore cannot show that counsel's performance was deficient in this regard, and she is not entitled to § 2255 relief.

Even assuming for purposes of this motion only that counsel was deficient for failing to

---

[5] The transcript of the sentencing hearing indicates that the PSR for at least one of Movant's co-defendants had been corrected to show that J.D. subsequently updated a USPO case agent with information of a lesser inventory loss amount, personal property losses, and rental car damage resulting from the robbery underlying Movant's offense of conviction. (*See* doc. 446 at 7, 18); *see also Vargas v. United States*, No. 3:16-CR-56-L(2), doc. 311-1 at ¶ 48 (N.D. Tex. Apr. 13, 2018). The record indicates that Movant's PSR was not updated to reflect the amended loss amount and corresponding restitution amount. (*See* doc. 446 at 7.)

challenge the loss and restitution amounts as alleged, deficient performance alone is insufficient to establish relief under § 2255. *Strickland* also requires a showing of prejudice. To show prejudice in the sentencing context, a movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice."). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *See Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).

Here, Movant has failed to provide any facts or evidence to show a reasonable probability that her sentence would have been less harsh if counsel had objected to or clarified the loss and restitution amounts as alleged. Further, because the amended loss amount was greater than $95,000, but less than $500,000, a two-level enhancement under § 2B3.1(b)(7)(C) was still applicable in the calculation of her guideline imprisonment range. *See* U.S.S.G. 2B3.1(b)(7)(C) (increasing offense level by two levels for a robbery loss of more than $95,000, but less than $500,000). The record does not support a claim that her sentence would have been less harsh absent counsel's alleged deficiencies. Movant's conclusory allegations, unsubstantiated by evidence in the record, fail to show *Strickland* prejudice. *See, e.g.*, *Miller*, 200 F.3d at 282; *Ross*, 694 F.2d at 1011. Her claim is without merit and should be denied.[6]

### IV.   MISAPPLICATION OF THE SENTENCING GUIDELINES

In her third and fourth grounds, Movant contends that the sentencing guidelines were

---

[6] In her reply, Movant alleges that "a *Strickland* Expert can review the attorney performance and will be proved [sic] that her attorney's job was Ineffective and caused a harmful sentence and an unlawful imposition of restitution." (doc. 6 at 2.) She claims that, "[a]s the matter of the facts the expert will proved [sic] that the attorney never intented [sic] to have compulsory process for obtaining witnesses or evidence in her favor." (*Id.*) As discussed, conclusory allegations are insufficient to establish ineffective assistance of counsel, and Movant still has failed to show that § 2255 relief is warranted.

misapplied as to the loss amount attributed to her and the enhancement for use of a dangerous weapon, respectively. (*See* No. 3:20-CV-445-L-BH, doc. 1 at 7-8.) In her third ground, Movant alleges that "a debt collector, in this case the government, must validate the alleged debt/restitution if he is requested to do so, and must cease all collection activity until validation is provided," and she claims that the Government "has the burden of proving a victim's actual loss." (*Id.*, doc. 1 at 7.) She states, "[T]o avoid a constitutional violation of the Amendment V, the Due Process of Law Clause and the matter of the facts of the miscalculation of the loss amount and/or restitution, [M]ovant is respectfully challenging the alleged loss and requesting a Complete Audit Forensic Account and/or the appraisal evaluation documents of the alleged stolen items." (*Id.*) In her fourth ground, she contends that "the court erred adding 4-levels [sic] to the range of the guidelines," and that, "[u]nder the new provision stipulated in The first step act [sic] of 2018, an enhancement for dangerous weapons must meet the criteria of a 'serious violent falony [sic]', which is not the category of this offense." (*Id.*, doc. 1 at 8.) The Government argues that these grounds are procedurally barred and are not cognizable in this habeas proceeding. (*See id.*, doc. 5 at 7-9.)

As noted, a movant may be procedurally barred from collaterally attacking claims that were not raised in a direct appeal. *Willis*, 273 F.3d at 595. To overcome the bar, they must show "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. Even then, any new assertion of error is limited to "issues of constitutional or jurisdictional magnitude." *Id.* The only exception is when a movant can establish a fundamental miscarriage of justice, i.e., that she is actually innocent of the crime convicted. *Id.* In the spaces provided to explain why she did not appeal or previously raise these claims, Movant states only that "[t]he appeal attorney failed to do the appeal in this matter," and "[t]he attorney failed to do his job as legal counselor." (No. 3:20-CV-445-L-BH, doc. 1 at 8, 10.) She does not, however, assert any

claims of ineffective assistance of counsel on these bases or provide any facts or evidence in support of any such claims in her § 2255 filings. Her conclusory statements are insufficient to establish cause or prejudice, and she also has not alleged or shown actual innocence of the crime of conviction. Her third and fourth grounds are therefore procedurally barred.

Even if the claims were not procedurally barred, it is well established that the technical application of the sentencing guidelines is not subject to collateral review in a § 2255 motion. *See, e.g., United States v. Williamson,* 183 F.3d 458, 462 (5th Cir. 1999). "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed. Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions." *Id.* (citations omitted). Further, to the extent Movant challenges her restitution amount, "[a] challenge to the restitution or fine portion of a sentence is a nonconstitutional issue relative to sentencing that should be raised on direct appeal and not for the first time in a § 2255 proceeding." *Campbell v. United States*, 330 F. App'x 482, 482-83 (5th Cir. 2009). "A district court lacks jurisdiction to [ ] modify [a] restitution order under § 2255, a writ of coram nobis, or 'any other federal law.'" *Id.* at 483 (quoting and citing *United States v. Hatten*, 167 F.3d 884, 886-87 & nn. 3 & 6 (5th Cir. 1999)). Accordingly, Movant's claims challenging the trial court's determination of her restitution amount and application of the sentencing guidelines are not cognizable under § 2255, warrant no relief, and should be denied.

## V. EVIDENTIARY HEARING

To the extent Movant seeks an evidentiary hearing, no evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A movant "is entitled to an evidentiary hearing on his § 2255

motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citation omitted). "[B]are, conclusory allegations unsupported by other indicia of reliability in the record, do not compel a federal district court to hold an evidentiary hearing." *Ross*, 694 F.2d at n.2.

Here, Movant has failed to demonstrate the existence of a factual dispute that creates a genuine issue. She also has failed to come forward with independent indicia in support of the likely merit of her claims. *See Reed*, 719 F.3d at 373. Movant has therefore failed to demonstrate she is entitled to an evidentiary hearing on any of her claims.

## VI.    RECOMMENDATION

The *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on February 19, 2020 (doc. 1), should be **DENIED** with prejudice.

**SIGNED this 13th day of January, 2023.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                                                            _____
                                                                                            IRMA CARRILLO RAMIREZ
                                                                                            UNITED STATES MAGISTRATE JUDGE